[Doc. No. 50]

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NEW JERSEY**
**CAMDEN VICINAGE**

---

MORGAN SCOTT,

              Plaintiff,

     v.

CORRECTIONAL MEDICAL SERVICES,
INC., NEW JERSEY DEPARTMENT OF
CORRECTIONS, GEORGE HAYMAN,
DEEPA BOCK, JOHN GODINSKY,
CLAVEL NELSON, VIVEK BAGADE,
JOHN DOE (1-10), JANE DOE (1-
10),

              Defendants.

---

Civil No. 06-5552 (RMB)

**OPINION**

Appearances:

      Rosemary Pinto
      Feldman & Pinto
      1604 Locust Street, 2R
      Philadelphia, PA 19103
          Attorney for Plaintiff.

      Gary J. Lesneski
      Jeffrey M. Scott
      Kerri E. Chewning
      Archer & Greiner, PC
      One Centennial Square
      P.O. Box 3000
      Haddonfield, NJ 08033
         Attorneys for Defendants, Correctional Medical
         Services, Inc., Deepa Bock, N.P., John Godinsky, M.D.,
         and Clavel Nelson, R.N., N.P.

**BUMB**, United States District Judge:

1

## I.  INTRODUCTION

This matter comes before the Court on a partial motion for summary judgment, brought by Defendants Correctional Medical Services, Inc. ("CMS"), Deepa Bock, N.P. ("Bock"), John Godinsky, M.D. ("Dr. Godinsky"), and Clavel Nelson, R.N., N.P. ("Nelson") (collectively, "Defendants").  Plaintiff is an inmate at South Woods State Prison in Bridgeton, New Jersey, which is operated by the New Jersey Department of Corrections ("NJDOC").  Defendant CMS is a private corporation that provides and manages the medical care system for the NJDOC.  Defendants Bock, Godinsky, and Nelson are medical professionals who work under contract for CMS and were involved in Plaintiff's medical care at South Woods State Prison.

On November 20, 2006, Plaintiff filed a Complaint against Defendants (as well as the NJDOC and NJDOC Commissioner, George Hayman)[1] alleging five claims:  1) medical malpractice; 2) violation of his Eighth Amendment rights under 28 U.S.C. § 1983; 3) corporate negligence; 4) intentional infliction of emotional distress; and 5) negligent infliction of emotional distress. (Compl. ¶¶ 38-72).  Defendants now seek partial summary judgment as to Plaintiff's Eighth Amendment claim (Count II).

_____

[1] On October 30, 2007, this Court dismissed all claims against the NJDOC and Commissioner Hayman in his official capacity.  (Dkt. No. 49).

## II.  FACTS

Plaintiff, a 45 year-old man, was committed to Northern State Prison in May 2004.  On June 21, 2004, Plaintiff presented at the prison medical clinic with complaints of a nine-month history of intermittent blood spotting from his rectum.  He saw Defendant Deepa Bock, N.P. who performed a full physical, including a rectal examination.  N.P. Bock identified an internal growth in Plaintiff's rectum which she diagnosed as a small internal hemorrhoid and prescribed Plaintiff Anusol and Colace to ease his symptoms.  Apparently, no doctor reviewed this note and no colonoscopy, sigmoidoscopy or other lower GI work was ordered.  However, N.P. Bock did conduct an occult blood stool test, which was negative.  Plaintiff returned to the clinic one month later, on July 21, 2004, with complaints of constipation.  He was given Milk of Magnesia by Nurse Stephens.

Plaintiff did not complain about his gastrointestinal symptoms again for almost two months.  However, on September 16, 2004, he came back to the clinic with complaints of anal itching at night.  N.P. Bock noted that he had a thirteen pound weight loss and a questionable history of hemorrhoids.  She prescribed Plaintiff a 90-day course of Anusol, Thermaderm lotion and Milk of Magnesia.  Again, no further testing was done at this time.

On November 26, 2004, Plaintiff returned to the clinic with complaints of constipation, rectal itch and intermittent rectal

3

bleeding.  He saw Clavel Nelson, N.P. who did not conduct a rectal exam but prescribed Plaintiff Metamucil, Mylanta and Anusol.

Plaintiff returned to the clinic again on December 21, 2004, with complaints of constipation, rectal bleeding and anal itching.  N.P. Bock performed another rectal exam and noted an internal hemorrhoid.  She also found that his stool was guaiac negative.  She prescribed Plaintiff Anusol and instructed him to follow-up if the bleeding increased.  No further diagnostic testing was done.

On January 18, 2005, Plaintiff came to the clinic complaining of a lump in his left groin area.  N.P. Bock and Dr. Godinsky diagnosed the lump as an enlarged lymph node 1 cm in size and advised him to return if it did not go away within a few weeks.  On February 7, 2005, N.P. Nelson found that the mass in Plaintiff's groin had grown to 3x2 cm and an ultrasound was ordered.  This test was performed on February 25 and it showed a probable enlarged lymph node.[2]  By April 28, 2005, the node in Plaintiff's groin had become so enlarged that it was causing pain in his leg.  Plaintiff was referred to surgery.  However, Dr. Richard Hellander, the utilization review manager, denied the surgical consult because the referral did not contain enough

---

[2] The test results did not appear on Plaintiff's medical chart until March 10, 2005 and were not relayed to Plaintiff until March 14, 2005.

"documentation describing this mass" and why it needed to be removed.  On May 9, 2005, Plaintiff was seen in the clinic by Dr. Hochberg who noted that the left inguinal mass was now causing pain in Plaintiff's buttocks.  Dr. Hochberg also recommended a surgical evaluation and discussed the situation with Dr. Godinsky.  However, apparently, no surgical consult was done.

Thereafter, Plaintiff's visits to the clinic continued on a frequent basis.  On May 16, he came to the clinic with complaints of pain in his lower left quadrant as well as hemorrhoids and blood spotting.  Joel Bucholtz, P.A. prescribed him Colace and Anusol.  On May 27, 2005, Plaintiff complained of rectal fullness which was painful and unresponsive to suppositories and cream. Patricia Stephens, N.P. performed a rectal exam and described his rectal tone to be flaccid with a hard indurated circular mass in the rectal area which was tender to palpitation.  She recommended a GI consult.  Plaintiff was seen again on June 3, 2005 with complaints of pain which he thought was due to an internal hemorrhoid.  He was given Motrin and awaited a GI consult.

Finally, on June 15, 2005, one year after his initial complaints, Plaintiff saw a GI specialist who said the history and physical examination was very suggestive of squamous cell carcinoma and ordered a colonoscopy.  However, the colonoscopy was not done until July 18, over a month after the specialist had ordered it.  In the meantime, Plaintiff saw Joel Buchholtz in the

5

clinic for hemorrhoidal pain and was prescribed medication.  The
colonoscopy was done on July 27, 2005, over thirteen months after
Plaintiff's initial complaints of rectal bleeding.  A biopsy was
also performed and forwarded to Dr. Godinsky.  Although no
definitive invasive carcinoma was identified, further evaluation
was strongly recommended, as indicated on Plaintiff's chart on
August 8, 2005.  Dr. Godinsky also consulted with the GI doctor
who suggested removal of the left inguinal node.

    Another month passed before Plaintiff met with Dr. Hertzog
for a surgery consult on August 30, 2005.  At that time, it was
noted that Plaintiff probably had cancer and urgently needed to
be admitted to St. Francis Medical Center.  However, despite the
urgency of his medical situation, Plaintiff was not admitted to
surgery because the tissue diagnosis was not complete.  Instead,
on September 13, 2005, Plaintiff was seen by Dr. Godinsky back in
the clinic where he was told that he likely had cancer and a poor
prognosis.  On September 27, Plaintiff was admitted to the
infirmary for a colonoscopy and biopsy, which ultimately led
doctors to conclude that Plaintiff had metastatic cancer.

    Despite this initial diagnosis in September 2005, the
oncologists were unable to determine the primary source of the
cancer at that time.  On October 11, 2005, Dr. Godinsky
prescribed Plaintiff mineral oil for constipation and ordered CT
scans of Plaintiff's abdomen, chest and pelvis.  However, the

scans were not performed until November 9, 2005.  In the
meantime, Plaintiff was ordered a donut cushion because the tumor
in his rectum had grown so large that he could not sit
comfortably.  Throughout November and December, Plaintiff was
treated primarily with pain medication.  It was not until January
2006 that the oncologists confirmed that Plaintiff suffered from
primary rectal cancer.  Thus, one and one-half years elapsed
between the time of Plaintiff's initial complaints of rectal
bleeding (June 2004) and his final diagnosis of rectal cancer
(January 2006).

Even after the final diagnosis, Plaintiff waited another
month before he began chemotherapy and radiation treatment in
February 2006.  Following this treatment, Plaintiff underwent
definitive surgery, including an abdominal/peritoneal resection
and prostate/bladder resection.  He then received additional
palliative chemotherapy to control disease progression until he
was discharged from prison on October 30, 2007.

**III.  STANDARD OF REVIEW**

Summary judgment shall be granted if there is no genuine
issue as to any material fact and the moving party is entitled to
a judgment as a matter of law.  Fed. R. Civ. P. 56(c); <u>Hersh v.
Allen Products Co.</u>, 789 F.2d 230, 232 (3d Cir. 1986).  A dispute
is "genuine" if "the evidence is such that a reasonable jury

7

could return a verdict for the non-moving party." See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "In making this determination, a court must make all reasonable inferences in favor of the non-movant." Oscar Mayer Corp. v. Mincing Trading Corp., 744 F. Supp. 79, 81 (D. N.J. 1990) (citing Meyer v. Riegel Prods. Corp., 720 F.2d 303, 307 n.2 (3d Cir. 1983)). However, "[w]hen opposing summary judgment, the nonmovant may not rest upon mere allegations, but rather must 'identify those facts of record which would contradict the facts identified by the movant.'" Corliss v. Varner, 2007 WL 2709661 at *1 (3d Cir. September 17, 2007) (quoting Port Auth. of N.Y. and N.J. v. Affiliated FM Ins. Co., 311 F.3d 226, 233 (3d Cir. 2003)). "At the summary judgment stage the judge's function is not...to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson, 477 U.S. at 249.


IV.  DISCUSSION

When bringing an action under 42 U.S.C. § 1983, a Plaintiff must satisfy a two-prong test by showing that:  1) the conduct complained of was committed by a person acting under color of state law, and 2) the conduct deprived that person of rights guaranteed by the United States Constitution.  West v. Atkins, 487 U.S. 42, 48 (1988).  The parties do not dispute that

Defendants were acting under color of law.  The focus of the dispute is whether Plaintiff was deprived of his Eighth Amendment rights.

The Eighth Amendment proscription against cruel and unusual punishment requires that prison officials provide inmates with adequate medical care.  Estelle v. Gamble, 429 U.S. 97, 103-04 (1976); Rouse v. Plantier, 182 F.3d 192 (3d Cir. 1999).  In order to set forth a cognizable claim for a violation of his right to adequate medical care, an inmate must allege:  (1) a serious medical need; and (2) behavior on the part of prison officials that constitutes deliberate indifference to that need.  Estelle, 429 U.S. at 106; Natale v. Camden County Correctional Facility, 318 F.3d 575, 582 (3d Cir. 2003).

To satisfy the first prong of the Estelle inquiry, the inmate must demonstrate that his medical needs are serious.  "Because society does not expect that prisoners will have unqualified access to health care, deliberate indifference to medical needs amounts to an Eighth Amendment violation only if those needs are 'serious.'"  Hudson v. McMillian, 503 U.S. 1, 9 (1992).  The Third Circuit has defined a serious medical need as: (1) "one that has been diagnosed by a physician as requiring treatment;" (2) "one that is so obvious that a lay person would recognize the necessity for a doctor's attention;" or (3) one for which "the denial of treatment would result in the unnecessary

and wanton infliction of pain" or "a life-long handicap or
permanent loss." Atkinson v. Taylor, 316 F.3d 257, 272-73 (3d
Cir. 2003)(internal quotations and citations omitted); see also
Monmouth County Correctional Institutional Inmates v. Lanzaro,
834 F.2d 326, 347 (3d Cir. 1987), cert. denied, 486 U.S. 1006
(1988).  In this case, there is no doubt that Plaintiff's cancer
constitutes a serious medical need.

The second element of the Estelle test requires an inmate to
show that prison officials acted with deliberate indifference to
his serious medical need.  See Natale, 318 F.3d at 582 (finding
deliberate indifference requires proof that the official knew of
and disregarded an excessive risk to inmate health or safety).
"Deliberate indifference" is more than mere malpractice or
negligence; it is a state of mind equivalent to reckless
disregard of a known risk of harm.  Farmer v. Brennan, 511 U.S.
825, 837-38 (1994).  Furthermore, a prisoner's subjective
dissatisfaction with his medical care does not in and of itself
indicate deliberate indifference.  Andrews v. Camden County, 95
F. Supp.2d 217, 228 (D.N.J. 2000); Peterson v. Davis, 551 F.
Supp. 137, 145 (D. Md. 1982), aff'd, 729 F.2d 1453 (4th Cir.
1984).  Similarly, "mere disagreements over medical judgment do
not state Eighth Amendment claims." White v. Napoleon, 897 F.2d
103, 110 (3d Cir. 1990).  "Courts will disavow any attempt to
second-guess the propriety or adequacy of a particular course of

10

treatment ... [which] remains a question of sound professional judgment." Inmates of Allegheny County Jail v. Pierce, 612 F.2d 754, 762 (3d Cir. 1979) (internal quotation and citation omitted). Even if a doctor's judgment concerning the proper course of a prisoner's treatment is ultimately shown to be mistaken, this would not constitute an Eighth Amendment violation, but at most, medical malpractice. Estelle, 429 U.S. at 105-06; White, 897 F.3d at 110.

The Third Circuit has found deliberate indifference where a prison official: (1) knows of a prisoner's need for medical treatment but intentionally refuses to provide it; (2) delays necessary medical treatment for non-medical reasons; or (3) prevents a prisoner from receiving needed or recommended treatment. See Rouse, 182 F.3d at 197. The court has also held that needless suffering resulting from the denial of simple medical care which does not serve any penological purpose violates the Eighth Amendment. Atkinson, 316 F.3d at 266; see also Monmouth County Correctional Institutional Inmates, 834 F.2d at 346 ("deliberate indifference is demonstrated '[w]hen ... prison authorities prevent an inmate from receiving recommended treatment for serious medical needs or deny access to a physician capable of evaluating the need for such treatment"); Durmer v. O'Carroll, 991 F.2d 64 (3d Cir. 1993); White v. Napoleon, 897 F.2d 103 (3d Cir. 1990).

In this case, Plaintiff contends that Defendants ignored Plaintiff's signs and symptoms of colorectal cancer and failed to exercise sound professional judgment, which caused unreasonable delay in the diagnosis and treatment of Plaintiff's disease. Plaintiff argues that Defendants' conduct in failing to diagnose and treat Plaintiff timely was such a gross departure from the standard of care, that it amounts to deliberate indifference. In response, Defendants argue that Plaintiff received medical treatment based on Defendants' professional judgment and, thus, Plaintiff cannot establish the deliberate indifference required to prove an Eighth Amendment violation. Defendants assert that the issue of whether their treatment decisions were "sound" is only relevant to Plaintiff's medical malpractice claim and cannot sustain a constitutional claim.

In support of their position, Defendants rely heavily on the decision in Christy v. Robinson, 216 F. Supp. 2d 398 (D.N.J. 2002). There, the plaintiff claimed that the defendants had violated his Eighth Amendment rights "by misdiagnosing him with RA, ignoring or avoiding the opinions of other doctors who found that he suffered from hepatitis C-related arthritis..." Id. at 414. Judge Irenas concluded that the evidence in the record failed to show the type of deliberate indifference necessary to establish an Eighth Amendment violation. First, the record did not show that the defendants misdiagnosed the plaintiff; second,

even if the plaintiff had been misdiagnosed, "a misdiagnosis alone will not constitute deliberate indifference." Id. at 415.

This Court finds the present case distinguishable from Christy. Whereas the record in Christy did not establish that the plaintiff had been misdiagnosed at all, in this case there is no doubt that Plaintiff was repeatedly misdiagnosed with hemorrhoids for more than a year. As noted in Christy, "the Third Circuit has found constitutional violations where some level of care had been provided, but the care was not based on sound medical judgment." Id. at 414. Here, Plaintiff complained of rectal bleeding, constipation, discomfort, etc. for over a year before any diagnostic testing was done beyond a rectal exam. The fact that he was consistently misdiagnosed for more than a year despite these symptoms suggests that Defendants' medical judgment was not sound, i.e., based on non-medical reasons. See id. Thus, this situation is distinguishable from the situation in Christy.

Defendants also argue that to the extent they failed to exercise sound medical judgment, such failure can only support a claim for medical malpractice, not a constitutional violation. This argument is similar to the one raised by the defendants in Durmer v. O'Carroll, 991 F.2d 64, 68-69 (3d Cir. 1993). In that case, "defendants rel[ied] not so much on a suggestion that the treatment provided [plaintiff] was adequate and appropriate, but

13

rather that if it was inappropriate, it was no more than mere

negligence." Id.  In light of the circumstances in that case,

the Third Circuit rejected this argument explaining,

> if we assume that [plaintiff] received inadequate
> medical care, Dr. O'Carroll's intent becomes critical:
> if the inadequate care was a result of an error in
> medical judgment on Dr. O'Carroll's part, [plaintiff's]
> claim must fail; but, if the failure to provide
> adequate care ... was deliberate, and motivated by non-
> medical factors, then [plaintiff] has a viable claim.
> It is therefore important that <u>the trier of fact hear
> Dr. O'Carroll's testimony in order to assess his
> credibility</u>, and that [plaintiff's] counsel be
> permitted to explore the doctor's motivation on cross-
> examination.

Id. at 69 (emphasis added).

Here, the parties dispute whether or not Defendants' medical

judgments fell short of the relevant standard of care.  The

experts sharply disagree as to whether Plaintiff's symptoms were

appropriately evaluated.  Plaintiff's first expert states that

"this patient was grossly neglected.  He was not appropriately

tested or diagnosed and treatment was delayed despite these

classic signs of colon cancer."  (Letter from Leon H. Waller,

D.O. (Pl. Opp., Ex. A) at 2).  Plaintiff's second expert states

that cancer should have been suspected back in June 2004, when

Plaintiff first presented to N.P. Bock:  "[Plaintiff] gave a nine

month history of intermittent spotting.  This history mandated a

sigmoidoscopy, colonoscopy or barium enema on an urgent basis."

(Letter from Barry L. Singer, M.D. (Pl. Opp., Ex. B) at 2).

Given the evidence in the record, a jury could find that

Defendants' failure to diagnose Plaintiff's condition or even conduct the appropriate diagnostic tests for over a year, despite Plaintiff's significant symptoms, constituted deliberate indifference.  See, e.g., Durmer, 991 F.2d at 68-69 (holding that triable issue of fact existed as to doctor's intent in failing to provide patient physical therapy); Liscio v. Warren, 901 F.2d 274, 277 (2d Cir. 1990) (holding that whether failure to diagnose constituted deliberate indifference was a material factual dispute precluding summary judgment); McElligott v. Foley, 182 F.3d 1248, 1256-57 (11th Cir. 1999) (reversing district court's grant of summary judgment where "there was sufficient evidence to permit a jury to conclude that [the doctor and nurse] were deliberately indifferent to [plaintiff's] medical need for further diagnosis of and treatment for the severe pain he was experiencing").

Moreover, a jury could also find that Defendants' failure to treat Plaintiff for five months after diagnosing him with cancer constituted deliberate indifference.  Indeed, Defendants have offered no explanation as to why it took four months after the initial cancer diagnosis (from September 2005 to January 2006) to confirm that a rectal lesion was the "probable primary" site of Plaintiff's cancer.  Nor have Defendants given any reason why, even after the "final" diagnosis in January 2006, Plaintiff was forced to wait another month (until February 2006) to begin

15

chemotherapy treatment.

In sum, while the facts in this case may ultimately establish only negligence (or even exonerate Defendants entirely), "the determination of the difference between negligence and deliberate indifference is, in the circumstances of this case, one for a trier of fact to make." Hart v. Blanchette, 149 Fed. Appx. 45, 47 (2d Cir. 2005). In light of all the evidence in the record, a jury could determine that Defendants' conduct was more than simple negligence and conclude that it constituted deliberate indifference. Accordingly, Defendants are not entitled to summary judgment.


**V.   CONCLUSION**

For the aforementioned reasons, Defendants' motion for summary judgment as to Plaintiff's Eighth Amendment claim must be denied. An appropriate Order will issue this date.


Dated:  July 21, 2008          s/Renée Marie Bumb
                               RENÉE MARIE BUMB
                               UNITED STATES DISTRICT JUDGE

16